# Exhibit A

| Approved, SCAO | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|

| STATE OF MICHIGAN<br>JUDICIAL DISTRICT<br>2nd JUDICIAL CIRCUIT<br>COUNTY PROBATE | SUMMONS AND COMPLAINT | CASE NO.<br>16 58 - NH<br>JOHN M. DONAHUE |
|---|---|---|

**Court address**
811 Port Street, St. Joseph, MI 49085

**Court telephone no.**
(269) 983-7111

| Plaintiff's name(s), address(es), and telephone no(s).<br>Marissa Collins, as Conservator for Jasmine Marlowe-Collins, a minor | v | Defendant's name(s), address(es), and telephone no(s).<br>Lakeland Hospitals at Niles and St. Joseph, Inc., d/b/a Lakeland Regional Medical Center |
|---|---|---|

Plaintiff's attorney, bar no., address, and telephone no.
Brian J. McKeen (P34123)
Richard T. Counsman (P3780)
McKeen & Associates, P.C.
645 Griswold, Ste. 4200
Detroit, MI 48226 (313) 961-4400/5985

**SUMMONS** **NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to **file a written answer with the court** and serve a copy on the other party or take other lawful action with the court (28 days if you were served by mail or you were served outside this state). (MCR 2.111[C])
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued<br>3-17-16 | This summons expires<br>6-16-16 | Court clerk<br>TYLER |
|---|---|---|

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

**COMPLAINT** *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

**Family Division Cases**
☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.
☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.
The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**General Civil Cases**
☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.
The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**VENUE**

| Plaintiff(s) residence (include city, township, or village)<br>Benton Harbor, MI | Defendant(s) residence (include city, township, or village)<br>St. Joseph, MI |
|---|---|

Place where action arose or business conducted
St. Joseph, MI

Date: 3/16/16

Signature of attorney/plaintiff

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01 (5/15) **SUMMONS AND COMPLAINT** MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a), (b), MCR 3.206(A)

| PROOF OF SERVICE | SUMMONS AND COMPLAINT |
|---|---|
| | Case No. *16-58-NH* |

**TO PROCESS SERVER:** You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

### CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

| ☐ OFFICER CERTIFICATE | OR | ☐ AFFIDAVIT OF PROCESS SERVER |
|---|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that: (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that: (notarization required) |

☐ I served personally a copy of the summons and complaint,
☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint, together with *AFF of MERITS*
List all documents served with the Summons and Complaint

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service *R.A. MARY ANN PATEL* | Day, date, time |
|---|---|---|
| Lakeland Hospitals at Niles, et al. c/o RA | 1234 Napier Ave, St. Joseph, MI 49085 | |
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

I declare that the statements above are true to the best of my information, knowledge, and belief.

| Service fee | Miles traveled | Mileage fee | Total fee |
|---|---|---|---|
| $ | | $ | $ |

Signature _____

Name (type or print) _____

Title _____

Subscribed and sworn to before me on _____, _____ County, Michigan.
                                          Date

My commission expires: _____  Signature: _____
                         Date                      Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

### ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _____
                                                                                          Attachments
_____ on _____
                                    Day, date, time
_____ on behalf of _____.

Signature

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF BERRIEN

MARISSA COLLINS, as Conservator for
JASMINE MARLOWE-COLLINS, a minor,

    Plaintiff,

vs.

No. 16-58-NH
Hon. JOHN M. DONAHUE

LAKELAND HOSPITALS AT NILES AND ST.
JOSEPH, INC., d/b/a LAKELAND REGIONAL
MEDICAL CENTER,
Jointly & Severally,

    Defendants.

---

BRIAN J. McKEEN (P34123)
RICHARD T. COUNSMAN (P37860)
McKEEN & ASSOCIATES, P.C.
Attorneys for Plaintiff
645 Griswold St., Suite 4200
Detroit, MI 48226
(313) 961-4400

---

### PLAINTIFF'S COMPLAINT, AFFIDAVITS OF MERIT, AND DEMAND FOR JURY TRIAL

There is no other civil action pending, or previously filed and dismissed, transferred, or otherwise disposed of arising out of the transaction or occurrence alleged in the complaint.

/s/ BRIAN J. McKEEN (P34123)

NOW COMES Plaintiff, Marissa Collins, as Conservator for Jasmine Marlowe-Collins, a minor, by and through her attorneys, McKeen & Associates, P.C., and for her Complaint and Demand for Jury Trial hereby states the following:

1. The amount in controversy exceeds Twenty-Five Thousand ($25,000.00) Dollars, excluding costs, interest and attorney fees and is otherwise within the jurisdiction of this court.

- 1 -

2. The cause of action arose in the County of Berrien, State of Michigan.

3. Plaintiff, Marissa Collins, was at all times relevant a resident of the County of Berrien, State of Michigan.

4. Jasmine Marlowe-Collins was at all times relevant a resident of the County of Berrien, State of Michigan.

5. Carmen F. Escotto, R.N. was at all times relevant hereto a licensed and Registered Nurse, conducting business in the County of Berrien, State of Michigan.

6. Pamela Bradshaw, CNM was at all times relevant hereto a Certified Nurse Midwife, conducting business in the County of Berrien, State of Michigan.

7. Defendant Lakeland Hospitals at Niles and St. Joseph, Inc., d/b/a Lakeland Regional Medical Center was at all times relevant hereto a health institution conducting business in the County of Berrien, State of Michigan.

8. Marissa Collins began her prenatal care at InterCare Benton Harbor on October 30, 2008, at approximately 8 weeks gestation.

9. This was her first pregnancy.

10. Her due date was June 7, 2009, which was based on an ultrasound done on January 24, 2008.

11. Marissa had a normal prenatal course under the care of Cathy McDonough, CNM.

12. Marissa presented to Lakeland Healthcare on May 29, 2009 at 0509, with complaints of mild and irregular contractions.

13. She was 38 5/7 weeks gestation.

14. At 0530, Carmen Escotto, R.N. noted that Marissa was having contractions every 4-5 minutes lasting 60-90 seconds, with occasional variable decelerations.

15. Cervical exam revealed that she was dilated to 1 cm, 60% effaced, and at -1 station.

16. The fetal monitor strip showed variable decelerations, and no accelerations.

- 2 -

17. At 0557 Nurse Escotto contacted Suzanne Chrisco-Wilcox, CNM, and advised her of Marissa's status.

18. Medication orders were received for Vistaril 100mg, and Morphine Sulfate 15 mg.

19. Between 0615 and 0650, there was minimal beat to beat variability, with variable and late decelerations.

20. Contractions were not tracing well.

21. At 0700, there was a deep deceleration to 90 beats per minute.

22. There was absent beat to beat variability, and no accelerations.

23. Pamela W. Bradshaw, CNM was noted to be on the unit, and gave a report regarding Marissa.

24. Between 0717 and 0740, the pattern of deep decelerations and absent variability continued.

25. Uterine contractions were not being adequately monitored.

26. At 0743 Pamela W. Bradshaw, CNM was in to see Marissa, and she allowed Marissa to get up to use the bathroom.

27. At 0750, Marissa returned from the bathroom.

28. Nurse Midwife Bradshaw was in the room to evaluate her.

29. At 0805, the fetal heart rate was in the 150's, with minimal variability and no accelerations.

30. Marissa's membranes were artificially ruptured, revealing meconium stained fluid.

31. A SVE was done, and Marissa was noted to be dilated only to 1-2 cm, 80% effaced, and at -1 station.

32. A fetal scalp electrode and Intrauterine Pressure Catheter were placed at that time.

33. At 0810 there were deep decelerations down to 70.

34. At 0822, there were deep late decelerations down to 70.

35. Between 0822 and 0837, they were attempting to start an IV.

36. At 0840 an IV and oxygen were started.

37. By this time, a change in the delivery plan was indicated, and either Nurse Escott or Pamela Bradshaw, CNM should have contacted an Ob/Gyn, and requested that they come in to evaluate Marissa for a c-section.

38. Between 0854 and 0907, the internal fetal monitor was not working properly, and there was no monitoring of the fetal heart rate.

39. By 0910, the baseline fetal heart rate had changed to between 155 and 160 beats per minute.

40. Marissa was contracting every 2 ½ minutes.

41. There continued to be no accelerations, and minimal variability.

42. At 0923 there were deep decelerations to 80-90, late decelerations, and no variability.

43. At 0933, there continued to be no variability, deep decelerations and a prolonged period of bradycardia.

44. According to the notes of Nurse Escott, Nurse Midwife Bradshaw was on unit reviewing the fetal monitor strip at 0935.

45. There was a deep late deceleration at 0950, and there continued to be no variability.

46. At 1000, Midwife Bradshaw noted that the variable decelerations had not resolved, and ordered that amnioinfusion be started.

47. Between 1000 and 1036, the pattern of prolonged deep decelerations, late decelerations, bradycardia, absent variability, and no accelerations continued.

48. Marissa had been placed on her hands and knees for a prolonged deceleration down to the 60's.

49. At 1036, Nurse Midwife Bradshaw performed a SVE, noting that Marissa was dilated to 4cm, 100% effaced, and at 0 station.

- 4 -

50. According to the nursing notes, Nurse Midwife Bradshaw called Dr. John Bard, M.D., an Ob/Gyn, for concerns related to the decelerations.

51. At 1044, the internal fetal monitor was reinserted by Nurse Midwife Bradshaw.

52. At 1045 there was a deep late deceleration down to 60-70, which lasted over 2 minutes.

53. There continued to be no variability, and no accelerations.

54. Marissa was contracting every 2-2 ½ minutes.

55. She remained on 100% oxygen, and was in the knee-chest position.

56. By 1055, Marissa was contracting every 1 ½ -2 minutes.

57. The pattern of fetal distress, i.e., prolonged late decelerations down to the 50's, combined with minimal variability and no accelerations, continued, and had been evident on the fetal monitor for several hours.

58. At 1058, Dr. Bard was in to see Marissa.

59. At 1100, the fetal monitor showed no variability, no accelerations, and fetal bradycardia down to 50-60 beats per minute.

60. At 1105, Dr. Bard attempted scalp stimulation, and advised Marissa that a c-section was necessary for "fetal distress."

61. At 1110, anesthesia arrived, and at 1115, Marissa was taken to the Operating Room.

62. The baby developed severe bradycardia, down to the 50's and 60's, which continued until the monitor was turned off six minutes later.

63. Jasmine Marlowe-Collins was born by emergency caesarean section on May 29, 2009, at 1132.

64. Her heart rate was less than 50.

65. She was noted to be hypotonic, and flaccid.

66. She required chest compressions, and positive pressure ventilation in the delivery room, and was immediately intubated.

- 5 -

67. Meconium was suctioned from the ETT after intubation.

68. Apgar scores were reportedly 3 at one minute, 5 at five minutes, and 5 at ten minutes.

69. The initial blood gas was noted to be drawn at 1213, which was 45 minutes after birth.

70. The result of that initial blood gas showed metabolic and respiratory acidosis, with a reported pH of 7.0, and a base deficit of 17.7.

71. The chart does not indicate whether a cord blood gas was performed.

72. At 1353, a transfer team arrived from Bronson Medical Center.

73. The assessment at the time of transfer included "perinatal asphyxia with fetal distress and meconium aspiration," and left sided pneumothorax.

74. According to the records from Bronson, when they arrived at Lakeland, the umbilical artery catheter was in an unsatisfactory position, and was therefore discontinued.

75. Follow-up blood gases were done when the baby arrived at Bronson, and were consistent with metabolic acidosis.

76. Chest x-ray showed a left pneumothorax.

77. Jasmine remained in the NICU at Bronson for eight days.

78. Jasmine has global developmental delays, and requires physical and occupational therapy.

79. She continues to exhibit signs and symptoms of permanent neurological damage as a result being deprived of the appropriate supply of blood and oxygen during labor.

## COUNT I: MEDICAL NEGLIGENCE OF HOSPITAL NURSES

80. Plaintiff repeats and re-alleges the allegations contained in all prior paragraphs of Plaintiff's Complaint as though fully incorporated herein.

- 6 -

Carmen F. Escotto, R.N. was negligent, inter alia, in the following particulars, in that a licensed and Registered Nurse, when presented with patients exhibiting the history, signs and symptoms such as those demonstrated by Marissa Collins, had a duty to timely and properly:

a. Perform and appreciate a thorough history and physical examination;

b. Provide adequate and continuous monitoring of the fetal heart rate and monitoring of labor to recognize, appreciate and respond to the progression of labor;

c. Continuously monitor the duration and frequency of uterine contractions;

d. Consistently and correctly assess and document baseline fetal heart rate, accelerations, decelerations and long term variability

e. Recognize the signs and symptoms of fetal distress and/or intolerance of labor,

f. including, but not limited to, repetitive/prolonged decelerations and decreased beat to beat variability on the fetal heart monitor tracing;

g. Take the appropriate action when fetal distress and/or intolerance of labor are identified, including but not limited to immediately notifying the attending physician that he/she needs to come in to evaluate the patient;

h. Seek reassurance of fetal wellbeing when it becomes apparent that the fetal heart monitoring patterns are showing signs of distress and/or intolerance of labor, including but not limited to performing a scalp and/or acoustic stimulation test;

i. Institute measures aimed at improving fetal oxygenation and placental perfusion, including but not limited to, repositioning mother, starting oxygen, increasing IV fluids, and decreasing or discontinuing uterine stimulants;

j. Ensure that the strength, duration and frequency of uterine contractions are monitored by seeking an order for an IUPC;

- 7 -

   Recognize the indications for a change in the delivery plan, including but not limited to decreased variability and decelerations, and aggressively seek an order for an expedited delivery;

l. Recognize that there was a non-reassuring fetal heart rate pattern and aggressively seek an order to provide the patient with an option of a c-section delivery;

m. Utilize the chain of command to ensure that an Ob/Gyn is contacted in a timely manner to perform a STAT c-section, particularly when the nurse midwife is failing to act upon the nonreassuring fetal heart rate tracings;

n. Utilize the chain of command to ensure that Marissa Collins receives adequate information to make an informed refusal or consent for a c-section;

o. Recognize the signs and symptoms of fetal distress and/or intolerance of labor and aggressively seek an order for a STAT c-section; and,

p. Any and all acts of negligence as identified through additional discovery.

82. Carmen F. Escotto, R.N. did none of these things, and such acts or omissions constitute professional negligence for which the Defendant Hospital is directly liable to Plaintiff.

83. At all times relevant hereto, Carmen F. Escotto, R.N. was an employee, agent, servant, or ostensible agent of Lakeland Regional Medical Center; Therefore, Defendant Lakeland Regional Medical Center is vicariously liable for the negligence of Carmen F. Escotto, R.N. pursuant to the Doctrine of Respondeat Superior and ostensible agency.

84. As a direct result of the negligence and breach of the standard of care by Nurse Escotto and Lakeland Hospitals at Niles and St. Joseph, Inc., d/b/a Lakeland Regional Medical Center, in failing to timely recognize that the decreased beat to beat variability and decelerations that were apparent on the fetal monitor were indications of fetal distress, requiring a STAT c-section, Jasmine Marlowe-Collins was deprived of the appropriate supply of blood and oxygen in utero, resulting in asphyxia and hypoxic ischemic insult, which caused her to sustain severe and

- 8 -

permanent neurological damages, secondary to hypoxic ischemic encephalopathy, including but not limited to global developmental delays, severe mental impairment, and cerebral palsy.

85. As a consequence of the Defendants' negligence, Plaintiff further claims all elements of damages permitted under the Michigan statutory law, and the common law, whether known now or whether becoming known during the pendency of this case.

WHEREFORE, Plaintiff hereby requests an award of damages against the Defendants herein, jointly and severally, in whatever amount above Twenty-Five Thousand [$25,000.00] dollars that Plaintiff is found to be entitled to, together with costs, interest and attorney fees, as well as all other damages allowed under Michigan Law.

### COUNT II: MEDICAL NEGLIGENCE OF LAKELAND HOSPITALS AT NILES AND ST. JOSEPH, INC., d/b/a LAKELAND REGIONAL MEDICAL CENTER

86. Plaintiff repeats and re-alleges the allegations contained in all prior paragraphs of Plaintiff's Complaint as though fully incorporated herein.

87. Defendant Lakeland Hospitals at Niles and St. Joseph, Inc., d/b/a Lakeland Regional Medical Center, was negligent, inter alia, in the following particulars, in that a licensed and accredited health care facility, through its agents, actual, and/or ostensible, servants, and/or employees, including, but not limited to Carmen Escotto, RN, and any and all other nurses who participated in the care and treatment of Marissa Collins, when presented with patients exhibiting the history, signs and symptoms such as those demonstrated by Marissa Collins and Jasmine Marlowe-Collins, had a duty to:

    a. Select, train and monitor its employees, servants, agents, actual or ostensible, or its staff of nurses, to insure that they were competent to provide proper obstetrical care and comply with the standard of care as described herein;

    b. Provide qualified medical staff with the proper training and ability to meet Marissa Collins's needs, including the ability to properly manage her labor and delivery in accordance with the standard of care described herein;

- 9 -

c. Create, implement, formulate and enforce protocols and/or procedures for patients with signs and symptoms of fetal distress and/or intolerance of labor, such as those experienced by Marissa Collins;

d. Provide proper obstetric services, including but not limited to, intrauterine fetal resuscitation, and the recognition of a non-reassuring fetal heart rate pattern;

e. Develop chain of command policies and procedures and educate the staff to utilize the chain of command to ensure that Marissa Collins's needs are being met and that Marissa Collins is provided proper obstetrical care in compliance with the standard of care as described herein;

f. Any and all acts of negligence as identified through additional discovery.

88. As a direct result of the negligence and breach of the standard of care by the Nurses and Lakeland Hospitals at Niles and St. Joseph, Inc., d/b/a Lakeland Regional Medical Center, including but not limited to Carmen F. Escotto, R.N., in failing to timely recognize that the decreased beat to beat variability and decelerations that were apparent on the fetal monitor were indications of fetal distress, requiring a STAT c-section, Jasmine Marlowe-Collins was deprived of the appropriate supply of blood and oxygen in utero, resulting in asphyxia and hypoxic ischemic insult, which caused her to sustain severe and permanent neurological damages, secondary to hypoxic ischemic encephalopathy, including but not limited to global developmental delays, severe mental impairment, and cerebral palsy.

89. As a consequence of the Defendants' negligence, Plaintiff further claims all elements of damages permitted under the Michigan statutory law, and the common law, whether known now or whether becoming known during the pendency of this case.

WHEREFORE, Plaintiff hereby requests an award of damages against the Defendants herein, jointly and severally, in whatever amount above Twenty-Five Thousand [$25,000.00] dollars that Plaintiff is found to be entitled to, together with costs, interest and attorney fees, as well as all other damages allowed under Michigan Law.

Respectfully Submitted:

McKEEN & ASSOCIATES, P.C.

*[signature]*

BRIAN J. McKEEN (P34123)
RICHARD T. COUNSMAN (P37860)
Attorneys for Plaintiff
645 Griswold St., Suite 4200
Detroit, MI 48226
(313) 961-4400

Dated: ~~February~~ March 16, 2016

- 11 -

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF BERRIEN

MARISSA COLLINS, as Conservator for
JASMINE MARLOWE-COLLINS, a minor,

    Plaintiff,

vs.

No. 16-    -NH
Hon.

LAKELAND HOSPITALS AT NILES AND ST.
JOSEPH, INC., d/b/a LAKELAND REGIONAL
MEDICAL CENTER,
Jointly & Severally,

    Defendants.

---

BRIAN J. McKEEN (P34123)
RICHARD T. COUNSMAN (P37860)
McKEEN & ASSOCIATES, P.C.
Attorneys for Plaintiff
645 Griswold St., Suite 4200
Detroit, MI 48226
(313) 961-4400

---

## DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, Marissa Collins, as Conservator for Jasmine Marlowe-Collins, a minor, by and through her attorneys, McKeen & Associates, P.C., and hereby demand a trial by jury in the above entitled cause of action.

    Respectfully Submitted:

    McKEEN & ASSOCIATES, P.C.

    */s/ Brian J. McKeen*
    BRIAN J. McKEEN (P34123)
    RICHARD T. COUNSMAN (P37860)
    Attorneys for Plaintiff
    645 Griswold St., Suite 4200
    Detroit, MI 48226
Dated: March 16, 2016    (313) 961-4400